PATTERSON, SECRETARY OF WAR, ET AL. *v.* LAMB.

No. 229.   Argued January 7, 1947.—Decided January 20, 1947.

*Frederick Bernays Wiener* argued the cause for petitioners. With him on the brief were *Acting Solicitor General Washington, Assistant Attorney General Sonnett* and *Paul A. Sweeney.*

*Roger Robb* argued the cause for respondent. With him on the brief were *Samuel T. Ansell* and *Mahlon C. Masterson.*

Mr. Justice Black delivered the opinion of the Court.

On October 28, 1944, respondent brought this action in the United States District Court for the District of Columbia against the then Secretary of War and Adjutant General of the Army.[1] He prayed for a judgment declaring that he had served in the United States Army from November 11, 1918 (Armistice Day) until November 14, 1918, and that for this service he was entitled to a certificate of honorable discharge from the Army, instead of the certificate of "Discharge from Draft" which had been issued to him. He also prayed for a mandatory injunction to compel issuance to him of a certificate of honorable discharge from the Army.

The complainant alleged that on November 9, 1918, he received a communication from his local draft board directing him to report to the board at Davenport, Iowa, for "immediate military service" at 9 a. m., November 11, 1918, and stating that from that day and hour he would be "a soldier in the military service of the United States"; that he reported as ordered, and was made the leader of the drafted group there assembled which was to board a train that day for a mobilization camp at Camp Dodge, Iowa; that during the day he was told that because of the Armistice the draft call had been canceled; that he and the other draftees would not go to Camp Dodge, but could return home, still soldiers, and await further orders; that four days later he received a notice from his board that by telegraphic order of the Provost Marshal, acting under instructions of the President, all induction orders through-

---

[1] The Secretary of War and The Adjutant General against whom the action was originally instituted are no longer in office; their successors have been properly substituted as parties.

out the Nation had been canceled, and all registrants, who, like himself, had been inducted but not entrained, were discharged from the Army; and that cancellation of their induction orders would have the effect of an honorable discharge from the Army. He further alleged that in January, 1919, he received a certificate dated November 14, 1918, entitled "Discharge from Draft," accompanying which was a check for four dollars ($4.00) bearing the notation "Final Pay"; that because of the foregoing circumstances he had always assumed that his discharge had the effect of an honorable discharge from the Army; that he had obtained certain tax exemptions from the State of Iowa on the ground that he had such a discharge, but was later authoritatively denied the exemptions by reason of a decision of the state supreme court, *Lamb* v. *Kroeger,* 233 Iowa 730, 8 N. W. 2d 405; that it was after this decision that he applied for and was denied an honorable discharge by the Secretary and Adjutant General.

The District Court sustained petitioners' motion to dismiss the complaint on the ground that it failed to state a cause of action for which relief could be granted. Other grounds of the motion, not passed on by the District Court, were that the alleged cause of action was not justiciable, was barred by laches, and that the type of certificate to be issued draftees under the circumstances alleged was a matter solely within the discretion of the Secretary of War and not a subject for judicial review. The Court of Appeals reversed, rejecting all the grounds set up in the motion to dismiss. 81 U. S. App. D. C. —, 154 F. 2d 319. This holding not only decided important questions concerning the power of the War Department, but also upset twenty-five years of important War Department rulings and practices which have affected, and will hereafter affect, the status and claims of thousands of draftees of the First World War. This called for our review, and we granted certiorari.

Whether and to what extent the courts have power to review or control the War Department's action in fixing the type of discharge certificates issued to soldiers,[2] is a question that we need not here determine; nor need we decide whether the action should have been dismissed because of laches. For we are satisfied that the War Department was within its power in granting a discharge from draft rather than the type of discharge it granted soldiers who performed military service after having become fully and finally absorbed into that service.

The only statute which directly bears upon "certificates of discharge" for enlisted men, Article of War 108, set out below,[3] does not particularly prescribe the types or contents of certificates authorized to be granted. But pursuant to authority granted by Congress,[4] the War Department many years ago promulgated Army Regulation No. 150 which provided for three types of certificates of discharge: honorable, dishonorable, and unclassified.[5] An honorable discharge was one granted to a soldier whose conduct in service had been such as to warrant his re-

---

[2] See *Denby* v. *Berry*, 51 App. D. C. 335, 279 F. 317, 263 U. S. 29; *Davis* v. *Woodring*, 111 F. 2d 523; *Palmer* v. *United States*, 72 Ct. Cl. 401; *Wilbur* v. *United States*, 281 U. S. 206; *cf.* 58 Stat. 286, 38 U. S. C. Supp. IV, § 693h.

[3] "No enlisted man, lawfully inducted into the military service of the United States, shall be discharged from said service without a certificate of discharge, signed by a field officer of the regiment or other organization to which the enlisted man belongs . . ." 39 Stat. 619, 668.

[4] 18 Stat. 337, 10 U. S. C. § 16; see also *United States* v. *Eliason*, 16 Pet. 291, 301–302.

[5] Paragraph 150 of the Army Regulations of 1913, corrected to April 15, 1917, was as follows:

"150. Blank forms for discharge and final statements will be furnished by the Adjutant General's Department and will be retained in the personal custody of company commanders. Discharge certificates will be used in the discharge of enlisted men

enlistment. This regulation was well suited to fit cases of soldiers who had enlisted under ordinary conditions, had seen service and had been discharged in the course of regular Army routine. On its face, however, it shows how poorly it was adapted to fit the extraordinary circumstances bound to develop in connection with a nation-wide program for passing upon acceptances, rejections, and discharges of draftees in the course of their progress from their homes to their complete and final integration into the Army. So, after the passage of the 1917 Draft Act, 40 Stat. 76, the War Department, on January 12, 1918, issued its Circular No. 651 in which it made provision for men discharged from draft as distinguished from men discharged from the Army. This provision, in effect when respondent reported for induction, had particular, though not necessarily exclusive, reference to draftees rejected for one reason or another at mobilization camps after their induction at their local draft boards. But despite the fact that draftees became subject to military law and duty from the moment of their arrival for entrainment at the local board, Selective Service Regulation 174–176 provided that they nevertheless were not finally accepted for military service, and could be rejected after arrival at camp.[6] And it was not until

and for no other purpose, and will be of three classes: For honorable discharge, for discharge, and for dishonorable discharge.

They will be used as follows:

1. The blank for honorable discharge, when the soldier's conduct has been such as to warrant his reenlistment and his service has been honest and faithful.

2. The blank for dishonorable discharge, for dishonorable discharge by sentence of a court martial or a military commission.

3. The blank for discharge when the soldier is discharged except as specified under sections 1 and 2 of this paragraph (C. A. R. Nos. 14 and 34)."

[6] Cf. Gibson v. United States, 329 U. S. 338; Dodez v. United States, 329 U. S. 338.

they had been finally accepted that they could or would be assigned to full-fledged duty as soldiers.

The Discharge from Draft Form No. 638, referred to in Circular No. 651, was originally prepared for draftees rejected at camp after induction "on account of physical unfitness, dependency, etc." Form No. 638 had been in use long prior to the respondent's rejection on the ground that the Government did not need his services after the Armistice. Had the Armistice not been declared, had respondent gone on to Camp Dodge, and had he then been rejected for any reason there, he would have received, not an honorable discharge from the Army, but a "Discharge from Draft." Yet we are asked to give the regulations and certificates a judicial construction, contrary to the Army's construction, whereby respondent, who got no farther than his local board, would stand in a better status than the tens of thousands of other draftees who came much closer to complete integration into the Army than he ever did.

An argument to support this contention is that the telegraphic order issued from Army headquarters on Armistice Day, which canceled entrainment orders for respondent and about 155,000 other draftees then ready for entrainment, provided that all of them were "discharged from the Army." But that same order stated that "The issue of formal papers of discharge will be considered and determined later" and that the purpose of the telegraphic order was "merely to cancel outstanding calls and stop the entrainment thereunder of men for the Army." And when "the issue of formal papers of discharge" was "later" considered, it resulted in War Department Circular No. 111 of 1918. That circular was the follow-up of the President's Armistice Day draft cancellation order, and as foreshadowed by the Armistice Day order, this circular prescribed with definiteness the type of "formal papers of discharge" which this respondent and others like him would later receive. It was a "Discharge from Draft."

No statute or previous Army Regulation had provided for the extraordinary situation which developed on Armistice Day and which made it necessary for the President to halt the processing of these thousands of men and direct that they return to their homes. When this new situation arose, it was certainly within the province of the War Department to provide for its solution by, among other things, issuing to those returned home an appropriate form of certificate, whether of the honorable discharge variety, a "discharge from draft," or some special form designed specifically for the occasion. Respondent was inducted into the Army and was discharged before he reached a mobilization camp for final processing. His discharge adequately indicates these facts. The law demands no more.

*Reversed.*