John Henry HARMON, III, Plaintiff,

v.

Wilber M. BRUCKER, Secretary of the Army, Defendant.

Civ. A. No. 1972–55.

United States District Court
District of Columbia.

Jan. 24, 1956.

David Shapiro, New York City (Dickstein, Shapiro, Fredman, New York City), James H. Heller, Helen M. Rosenthal, Washington, D. C., for plaintiff.

Joseph Guilfoyle, Donald MacGuineas, Edward Hickey, Washington, D. C., for defendant.

**YOUNGDAHL, District Judge.**

This cause came on to be heard on cross-motions for summary judgment.

Plaintiff was inducted into the Army on October 31, 1952, under the Universal Military Training Law of 1948, 50 U.S.C.A.Appendix, § 451 et seq. On February 9, 1954, he was orderd to reply to certain derogatory information which the Army had received about him. On March 11, 1954, plaintiff replied to questions concerning allegedly subversive activities in which he was involved in 1949, 1951, and 1952, such as employment at Camp Lakeland, with the Detroit Urban League, registering to vote with the American Labor Party in New York, and soliciting funds for defense of persons indicted under the Smith Act, 18 U.S.C.A. § 2385. Plaintiff's father and stepmother were alleged to be subversive.

Save for plaintiff's continuing association with his parents and for writing one letter requesting contribution for the legal defense of two persons indicted under the Smith Act, all charges against plaintiff were based on conduct antedating his induction into the Army.

On the basis of these facts the Army informed plaintiff, on April 2, 1954, that although he would be retained in the Army, he would not be promoted; that he would not be discharged as disloyal or subversive, but he would be assigned to non-sensitive duties; and that upon completion of his term of service, he would be given a discharge relative to the type of service rendered as of the date he became eligible for separation.

On April 7, 1954, the Secretary of Defense issued a Department of Defense Directive, number 5210.9, which modified existing regulations of the Armed Services so as to make the civilian security program for government employees apply to the military. Cases previously cleared were ordered reviewed and on May 26, 1954, the Adjutant General informed plaintiff's Commanding Officer that he would be discharged with an Undesirable Discharge under the provisions of Army Regulation No. 615–370, although the discharge now appears to have been made under 5210.9, i. e., that retention of plaintiff was inconsistent with the interests of national security. On June 2, 1954, plaintiff was discharged from the Army.

Plaintiff then applied unsuccessfully to the Army Discharge Review Board and the Army Board for the Correction of Military Records to have the character of his discharge changed from Undesirable on the ground that his services both as to character and efficiency had been rated as excellent throughout his entire army life. After plaintiff requested the Secretary of the Army to award him an honorable discharge, his case was reopened by the Army Board for Correction of Military Records but relief was denied.

In his complaint, plaintiff states that he is not now and never has been a member of the Communist Party or any of its front organizations, or of any organization which has engaged in subversive activities of any kind. Plaintiff asserts that he has always been "unswervingly loyal to the Government of the United States." To this the government responds that for lack of knowledge and information sufficient to form a belief, it denies plaintiff's assertion, but in its argument it concedes that it has never found plaintiff either disloyal or loyal. Since the position of the government is that plaintiff was dismissed under Directive 5210.9 which requires no finding of disloyalty, it maintains that assertions of loyalty are not material to the legal issues raised by the motions for summary judgment.

The Government concedes that during the entire period of plaintiff's military service he received an excellent rating both as to character and efficiency.

The authority to prescribe conditions under which a soldier shall be discharged from service has been vested by the Congress in the Secretary of the Army. 10 U.S.C.A. § 652a. Since the statute does not specify the categories of discharges to be issued, the Secretary has authorized a series of Army Regulations establishing five categories and describing the circumstances under which they shall be given. An Undesirable Discharge is issued to persons separated by administrative action from the Army because they are found to threaten the Army's discipline, or morale, or function as a national defense arm. Plaintiff was issued such a discharge as a security risk.

Understandably the establishment of standards and the administration of these standards have been considered as peculiarly military. It must be so for the military does constitute a specialized community, of necessity governed by a discipline uniquely adapted to its own needs. Respecting this the courts have been scrupulously careful not to interfere with, or intervene in, authorized and legitimate army matters. The statute authorizing military determination of discharge certificate has been construed to restrict judicial review.[1] Chief Judge Edgerton noted in Gentila v. Pace, 1951, 90 U.S.App.D.C. 75, 77, 193 F.2d 924, 927:

> "We think Congress intended that the Board's full and 'final' review should not be subjected to a further review, or series of reviews, in the courts. We may suppose that Congress considered the heavy burden that would be imposed upon courts if they were required to review the findings upon which Army discharges are based. * * * At the very least, we think the statute intends that merely erroneous findings of fact by the Discharge Review Board shall not be revised by a court."

Although it may be true that the immediate case presents questions of law, it likewise involves a review of the findings upon which the separation was based, for while the vast majority of facts upon which the government relies occurred prior to induction, at least one such fact occurred during the term of military service. We feel constrained to hold, therefore, that under the present state of the law we lack requisite authority to review, control or compel the granting of particular types of discharge certificates.

We would, nevertheless, be remiss if we failed to point out the inequities which may result, as in this case, from the lack of adequate Congressional circumscription of military action regarding discharges—action which is isolated from judicial review.

The established policy of the military has been that the character of a discharge certificate is rooted in, and fashioned from, the conduct of a man

1. See Marshall v. Wyman, D.C.1955, 132 F.Supp. 169; Davis v. Woodring, 1940, 72 App.D.C. 83, 111 F.2d 523.

during his term of service. In 1954, former Secretary of the Army Stevens stated:

"The traditional policy of the Army has been that the discharge given should reflect the service rendered. In other words, a man whose conduct has been faithful and honest during the time in service would be entitled to separation under honorable conditions, notwithstanding what his conduct may have been prior to entering the service." Hearings, Senate Armed Services Committees on S. 3096, 83d Cong. 2d Sess., March 18, 1954, at p. 75.[2]

Support for the proposition that a discharge certificate was intended to be an unlimited military appraisal of the lifelong conduct of an individual rather than a reflection of the quality of service rendered does not readily appear.

While the discharge certificate is issued by the military, it has tangible and practical consequences in civilian life. To an honorable discharge accrue property rights, civil rights, and community respect and honor. United States ex rel. Roberson v. Keating, D.C.Ill.1949, 121 F.Supp. 477. Conversely, one receiving an adverse discharge certificate must expect to encounter substantial prejudice in civilian life. See, for example, form letter issued by the Army under SR 600–220–1 effective June 18, 1954. Congress has been informed that discharges are made on the basis of actual military service rendered and not on matters extraneous to such service.[3] If, in practice, this is not the case, Congress should be so informed.

At the same time, if we have too narrowly construed the scope of judicial review under the present statute, it might be well to have a more definitive judicial determination as to the status of military service, the nature and import of a discharge certificate, and the scope of judicial review.[4] The Supreme Court has recently held that a soldier, once discharged, cannot be tried by the military for a crime alleged to have been committed while he was in the service.[5] We assume without question that the military cannot try a man for alleged criminal conduct committed prior to his entry into service. Does it not equally offend our traditional concept of justice that a man who serves the military with a rating of excellent can be dismissed by it, without being found disloyal, for non-criminal conduct which occurred primarily, if not exclusively, prior to induction, and can be furnished a discharge certificate which, by reflecting more than a record of military service, brings reproach and dishonor, in civilian life?

As the law now stands, we lack jurisdiction to review or grant relief and are constrained to hold that summary judgment be granted to defendant.

Defendant will prepare an order consistent with this finding.

2. See also 13 Op.Atty.Gen. 16 (1869), 18 Op.Atty.Gen. 427 (1886), and Army Regulation, No. 615–360.

3. Former Secretary of the Army Stevens testified before the Senate Armed Services Committee on March 18, 1954, that:

"When evidence fails to show that he is disloyal, or otherwise subversive, but does establish that he is otherwise a security risk and should be eliminated, he is separated under honorable conditions, usually with a general discharge."

4. The scope of the courts' power to review or control the action of the military in fixing the type of discharge certificate issued to soldiers has not as yet been clearly delineated by the Supreme Court. See Patterson v. Lamb, 1947, 329 U.S. 539, 542, 67 S.Ct. 448, 91 L.Ed. 485.

5. United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, 76 S.Ct. 1.