234 F.2d 134
 Robert E. SCHUSTACK, Plaintiff-Appellant,
v.
Lt. General Thomas W. HERREN, United States Army, Individually and as Commanding General, First Army, Lt. Col. Donald K. Hughes, United States Army, Individually and as President of the First Army Field Board of Inquiry, Lt. Col. Joe E. Starns, United States Army Reserve, and Lt. Col. Emil Simmons, United States Army Reserve, Individually and as members of the First Army Board of Inquiry, Defendants-Appellees.
 No. 277.
 Docket 23951.
 United States Court of Appeals Second Circuit.
 Argued March 13, 1956.
 Decided June 1, 1956.
 
 Dickstein, Shapiro & Friedman, New York City, David I. Shapiro and Harold Friedman, New York City, of counsel, for plaintiff-appellant.
 Paul W. Williams, U. S. Atty., for Southern Dist. of New York, Harold J. Raby, Asst. U. S. Atty., Arthur B. Kramer, Asst. U. S. Atty., New York City, for defendants-appellees.
 Before FRANK, LUMBARD and WATERMAN, Circuit Judges.
 FRANK, Circuit Judge.
 
 
 1
 The facts in this case are amply set out in Judge Sugarman's opinion, reported at 136 F.Supp. 850, and we need not repeat them here.
 
 
 2
 1. No one can reasonably doubt that the Army has the power to discharge without a hearing and without assigning any reason; such power is indispensable to the effective management of the armed services and to the national defense; and with the exercise of that power no court can properly interfere. But plaintiff argues — contrary to Judge Youngdahl's decision in Harmon v. Brucker, D.C.D.C., 137 F.Supp. 475 — that the federal courts have jurisdiction to review the issuance by the Army of a less than honorable discharge, on account of lawful pre-induction conduct, when such a discharge constitutes a violation of the dischargee's constitutional rights. See Marshall v. Wyman, D.C., 132 F.Supp. 169, 173.[1] Plaintiff's argument comes to this: (a) The issuance of a less than honorable discharge, for conduct preceding plaintiff's induction and unrelated to plaintiff's army service, has nothing to do with the management of the armed services, is extraneous to the Army's legitimate functions, and lies wholly beyond its powers. (b) A less than honorable discharge may have important adverse effects on a veteran's eligibility for various benefits under federal and state law,[2] and on his success in obtaining private or governmental employment.[3] (c) Besides this direct pecuniary harm, it involves a social stigma likely to harm plaintiff substantially. (d) Such effects may be aggravated by the requirement that the discharge papers of persons who do not complete their normal tour of duty, but are separated pursuant to AR 604-10 (the Army regulations relating to security risks), contain the statement "AR 604-10 applies," thus publicly proclaiming that the Army considers such persons to be security risks. See AR 604-10 Par. 19(b). (e) Any regulation which authorizes such a substandard discharge, merely because of lawful pre-induction conduct or associations, is unconstitutional. See Bernstein v. Herren, D.C., 136 F.Supp. 493; cf. Harmon v. Brucker, D.C.D.C., 137 F.Supp. 475. We need not and do not consider that argument, for reasons stated infra.
 
 
 3
 2. The trial judge assigned as one reason for dismissing the suit that it had been begun prematurely, i. e., that plaintiff had not yet received a less than honorable discharge and hence, no deprivation had occurred. This reason receives marked emphasis from facts, of which we take judicial notice, not called to the trial judge's attention. Those facts indicate that it is by no means certain that the regulations now in effect, as construed by the army officials, will necessarily lead to the issuance to plaintiff of less than an honorable discharge. Under recent amendments of Defense Department Directive No. 5210.9, on which the army regulations relating to security discharges are based, the army will take into consideration the service record of plaintiff in determining the character of his discharge, and it is possible that he will receive an Honorable Discharge, despite the "derogatory" information concerning his pre-service conduct and associations.[4] Apparently, plaintiffs were unaware of these amendments. (Perhaps, all else aside, the case is moot. The shifting and uncertain rulings, not generally published, leave us in doubt on that score.)
 
 
 4
 3. In Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 773, 67 S. Ct. 1493, 1503, 91 L.Ed. 1796, the Court said: "It is true that the presence of constitutional questions, coupled with a sufficient showing of inadequacy of prescribed administrative relief and threatened or impending irreparable injury flowing from delay incident to following the prescribed procedure, has been held sufficient to dispense with exhausting the administrative process before instituting judicial intervention." After making this statement, the Court pointed out that a remedy provided by Congress should be preferred, and continued: "To this of course should be added the further qualification that following the prescribed remedy, upon showing made, will not certainly or probably result in the loss or destruction of substantive rights."
 
 
 5
 We shall assume, arguendo, that that doctrine applies here, and that, especially because the delay incident to that exhaustion of remedies may well involve serious harm to plaintiff, he need not exhaust them before bringing suit. We shall also assume, arguendo, that plaintiff is certain to receive a less than honorable discharge (although, as indicated supra, we think that the army's present policy no longer makes such a result inevitable). Even so, we must affirm: (a) Plaintiff, in effect, seeks to ensure the issuance to him of an honorable discharge. (b) Only defendants' superiors have authority to issue a discharge. (c) The district court had no jurisdiction over those superiors, who were not parties to the suit. It therefore could not grant the desired relief.[5]
 
 
 6
 4. It might be urged that, if the hearing were certain to terminate in less than an honorable discharge, the district court could validly enjoin the holding of the hearing, even absent the defendants' superiors. But we interpret the regulations to mean that, if no hearing were held, those superiors could and would proceed, without a hearing, to issue a discharge less than honorable. Accordingly, the issuance of such an injunction would resemble the firing a blank cartridge.
 
 
 7
 For the same reason, we do not consider plaintiff's contention that, under the regulations, the hearing — especially because of want of confrontation and of cross-examination — will violate the requirements of procedural due process.
 
 
 8
 5. Plaintiff contends that, when he was separated from active service, he was entitled to a Certificate of Service and to a Records of Service. However, even if we assume plaintiff is entitled to these documents,[6] the defendants cannot issue them; they must be issued by the appropriate officers at the place of separation, Aberdeen Proving Grounds, in Maryland, and those officials are not parties to plaintiff's suit. Wherefore, the district court could not enter an effective order in this respect.[7]
 
 
 9
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 The Supreme Court has not yet spoken on the question of "whether and to what extent the courts have power to review or control the War Department's action in fixing the type of discharge certificates issued to soldiers * * *." Patterson v. Lamb, 329 U.S. 539, 542, 67 S.Ct. 448, 449, 91 L.Ed. 485
 
 
 [2]
 Although a General Discharge (Under Honorable Conditions) apparently entitles a veteran to most, if not all, benefits under federal law, the statutes of New York, of which plaintiff is a resident, requires that a veteran have an Honorable Discharge in order to be eligible for various benefits under state law. See e. g. New York Military Law, McK.Consol. Laws, c. 36, §§ 245, 250; New York General Municipal Law, McK.Consol. Laws, c. 24, § 148; New York Education Law, McK.Consol.Laws, c. 16, § 609; New York General Business Law, McK.Consol.Laws. c. 20, § 32
 An Undesirable Discharge has further adverse consequences with regard to state benefits. See e. g. New York Civil Service Law, McK.Consol.Laws c. 7, § 21; New York Education Law, § 608. In addition, such a discharge deprives the veteran of important benefits under federal law. See 5 U.S.C.A. § 851; 38 U. S.C.A. § 691 et seq., as amended. See also Chart prepared by Judge Advocate's Office of the Army, inserted in Hearings, Senate Armed Services Committee on S. 3096, 83d Congress, 2d Session, March 18, 1954, pp. 28-29; American Law of Veterans (1946) pp. 1100-1106.
 
 
 [3]
 See testimony of Mr. Barry Miller before the Hennings Committee, Hearings, Sub-Committee on Constitutional Rights, Senate Judiciary Committee, pursuant to S. Res. 94, 84th Congress, 2d Session, November 18, 1955, p. 393ff, concerning the difficulties incurred by a veteran, given a less than honorable discharge for security reasons, in obtaining a position with a large corporation doing government defense work
 
 
 [4]
 At the hearings before the Hennings Committee, Hearings on Security and Constitutional Rights, before the Subcommittee on Constitutional Rights of the Senate Judiciary Committee, pursuant to S.Res. 94, 84th Congress, 2d Sess., November 14-29, 1955, Government and army officials and other experts in the field, testified as to the army's practices, past and present, with respect to the determination of the character of a serviceman's discharge when he is separated for security reasons
 Before November 16, 1955, if the army had sufficient substantially derogatory information concerning a serviceman to require that he be discharged as a security risk or put on limited service, or if the serviceman raised his Fifth Amendment privilege in refusing to complete the army's loyalty questionnaire (DD Form 98), he received a less than honorable discharge. Testimony of Rowland Watts, pp. 360-361, 372, 408-409; Memorandum dated February 3, 1955 by former Secretary of the Army, Stevens, at p. 436 of the Hearings; Letter from Secretary of Defense Wilson to the Committee, p. 467; Testimony of Mr. Mansfield D. Sprague, General Counsel, Defense Department, p. 477; AR 604-10 Paragraphs 3(b), 19(a), 17(b) (1). Even where the army knew of the derogatory information prior to induction (either through investigations or information revealed by the inductee himself in answering the army's questionnaires), or where an inductee raised his constitutional privilege and refused to complete the army's DD Form 98 prior to induction, if these men were inducted, they could receive, only a less than honorable discharge. Testimony of Rowland Watts, p. 359; Letter from Secretary Wilson to the Committee, p. 466.
 On November 16, 1955, Defense Department Directive No. 5210.9 (which is the basis of the army's regulations on this matter, i. e., AR 604-10) was amended to provide that, if the army receives derogatory information concerning a prospective inductee, or if an individual, before induction, refuses to complete DD Form 98, an investigation will be made prior to induction. If this investigation reveals that the presence of the individual would not be clearly consistent with national security he will not be inducted. Letter from Secretary Wilson to the Committee, pp. 466-467; Directive No. 5210.9, VIII, E, F, as amended on November 16, 1955, NBA, Government Security and Loyalty 31:56. However, it is possible under this amended Directive that one who raises his Fifth Amendment privilege in refusing to complete the army's DD Form 98 will be inducted, since the result of the investigation might show that his presence in the services would not be inconsistent with national security. Such a person, even under the new November 16 policy, could never get an honorable discharge. Letter from Secretary Wilson to the Committee, p. 467; AR 604-10 Para. 17(b) (1).
 Thus, as of November 16, 1955, those who completed their DD Form 98's truthfully, but concerning whom significant derogatory information had been received (and, if received before induction, was not sufficient to establish that the presence of the inductee in the services would be inconsistent with the national security), would receive a discharge at the time of their separation whose character would be determined not only on the basis of the derogatory information (as previously), but also on the basis of their service record. Such persons would not necessarily receive less than honorable discharges. Letter from Secretary Wilson to the Committee, p. 467; Testimony of Mr. Sprague, General Counsel, Defense Department, p. 484; Testimony of Mr. Stephen S. Jackson, Assistant General Counsel, Defense Department, p. 469.
 On January 11, 1956, Directive No. 5210.9 was again amended so that now, any inductee who is accepted into the services after an investigation, required by the Directive, has been made, is to be given a discharge "predicated on the character of service rendered. `Character of Service' should be interpreted to include those factors normally taken into account in determining the character of separation where no adverse security finding has been made as well as any reasonably substantiated derogatory information concerning (a) subversive activities occurring during his period of service, and (b) falsification in connection with security matters, occurring during his period of service or pertaining to his entry into the service. The character of separation shall not take into account any limitation on performance of duty imposed for security reasons." Hearings at p. 495.
 In a letter to the Committee dated January 18, 1956, in which Mr. Sprague, General Counsel of the Department of Defense informed the Committee of the new amendment to Directive No. 5210.9, and explained the new Defense Department policy, he said that those who were inducted prior to November 16, 1955 but had not yet received a final discharge, would receive discharges whose character would be "determined under the current Department of Defense policy regarding inductees." Individuals "who complete their term of active duty will be awarded separations based on the character of their service, while persons discharged prior to the termination of their tour of active duty will receive a separation based on the character of their service as well as relevant substantiated derogatory information." Hearings, pp. 494-495.
 On March 26, 1956, the Department of the Army issued message 402295 to all army commands, advising them as to the current policy governing the character of discharge:
 "* * * 2. The following policy implements recent changes made by Department of Defense in the Military Personnel Security Program as it applies to characterization of discharge. Pending changes to paragraph 17b and 19a AR 604-10 this policy will guide Commanders and Field Boards of Inquiry in making recommendations on type of discharge:
 "a. Individuals who complete their term of active duty service will be awarded a separation based on the character of service performed.
 "b. Individuals discharged prior to completion of their term of active duty service will be discharged with the character of separation based on the gravity of the substantiated derogatory information (occurring prior to and during his period of service) requiring their discharge and upon the character of service performed.
 "c. Individuals discharged from United States Army Reserve prior to the completion of their term of Reserve service will be discharged with the character of separation based on the gravity of the substantiated derogatory information (occurring prior to and during his period of service) requiring their discharge and upon the character of service performed.
 "d. Character of service will be interpreted to include those factors normally taken into account in determining the character of separation where no adverse security finding has been made, as well as any reasonably substantiated derogatory information concerning:
 "(1) subversive activities occurring during his period of service, and
 "(2) falsification in connection with security matters occurring during his period of service or pertaining to his entry into the service. The character of separation shall not take into account any limitations or performance of duty imposed for security reasons."
 On April 27, 1956, Secretary of the Army Brucker, in answer to an "urgent need for revision" of present army policies, issued a directive relating to the "investigation, evaluation and adjudication of personnel security cases * * *" N. Y. Times, April 28, 1956 p. 8 Col. 3-4. It states, in part:
 "2) The criteria set forth in AR 604-10, lists activities and associations which warrant initiation of action to effect a determination as to whether acceptance or retention within the Army establishment is warranted. However, the mere existence of information falling within the scope of these criteria does not, in itself, constitute a bar to acceptance and retention. The determination that acceptance or retention is not clearly consistent with the interests of national security must be based upon competent information which indicates, or from which it may be logically inferred, that the individual is motivated or influenced by, or is sympathetic to subversive aims or ideologies.
 "3) In determining the risks involved in retaining an individual in, or eliminating him from the Army, or placing him on specially controlled duties, it is directed that the following factors be carefully considered,
 "(a) Whether or not the individual made full voluntary disclosure of substantial derogatory information,
 "(b) The age at which the derogatory action took place,
 "(c) The period of time over which the derogatory action took place
 "(d) Whether membership in a cited organization was the result of actual belief in, or knowledge of, the subversive nature of the organization, or was the result of a desire for social activities, or misguided belief in alleged patriotic motives espoused by the organization. (It should be remembered that Communist-front organizations were designed to ensnare persons by appealing to patriotic motives or other high ideals while the true nature of the organization was disguised.)
 "4) The fact that an individual's relatives or associates are, or have been engaged in activities or associations listed in the criteria will be used as an allegation only if there is available information which indicates, or from which it may be logically inferred, that the individual is sympathetically influenced in thought or action by the subversive activities or ideologies of his relatives or associates.
 "5) An individual will not be held accountable for the pro-communist or subversive opinions or activities of his character references, unless there is available competent information which indicates or from which it can logically be inferred, that he not only had knowledge of but sympathizes with or is influenced in thought or action by those opinions or activities of such character references."
 From these most recent declarations of policy, it would appear that, hereafter, all servicemen (even those who were inducted prior to November 16 without a pre-induction investigation, but who have not yet been finally discharged) who are separated after the completion of their active service, will receive a Certificate of Service based solely on their service record, without regard to pre-induction conduct or associations, or to the assertion of their Fifth Amendment privilege in refusing to complete DD Form 98. Also, if they complete their period of enrollment in the Reserves, they will be given a final discharge on the same basis. However, if they engage in subversive activities or falsely answer questions relating to security matters while in the service (at least in active service), this will be taken into consideration in determining the character of separation.
 If an individual is separated prior to the termination of his period of active service or prior to the completion of his Reserve obligation, it is still not certain that he will be given a less than honorable discharge. The character of his discharge will be determined on the basis of his service record and the derogatory information (apparently not including the assertion of his Fifth Amendment privilege in refusing to complete DD Form 98). And the "investigation, evaluation, and adjudication" of future cases will be governed by the Army's directive of April 27, 1956 providing for a fairer and more accurate evaluation of an individual's loyalty. It is possible that, in spite of the existence of derogatory information, an individual will receive an honorable discharge.
 
 
 [5]
 Blackmar v. Guerre, 342 U.S. 512, 72 S. Ct. 410, 96 L.Ed. 534; Burns v. McCrary, 2 Cir., 229 F.2d 286; Reeber v. Rossell, 2 Cir., 200 F.2d 334; Marshall v. Wyman, D.C., 132 F.Supp. 169; Harris v. Bayer, D.C., 18 F.R.D. 392; cf. United States ex rel. Vassel v. Durning, 2 Cir., 152 F.2d 455
 
 
 [6]
 Certificates of Service (DD Form 217A) are ordinarily given to servicemen at the time of their separation, after completing their period of active service, AR 615-360 Para. 5(a). A Discharge Certificate (DD Form 256A, DD Form 257A, DD Form 258A, DD Form 259A, DD Form 260A, depending on the character of discharge) is not normally given until the completion of the six year obligatory enrollment in the Reserves under the Selective Service and Training Act of 1952. The Army can, for one of several reasons (e. g. medical reasons, hardship, inaptitude, etc.), finally discharge a man before the expiration of his period of active and reserve duty. In such a case, the character of the discharge is governed by AR 615-360
 The Certificate of Service (DD Form 217A), like the Discharge Certificate, contains a designation of the character of the separatee's army service. This Certificate is now customarily withheld, in cases such as this, where an AR 604-10 proceeding is pending or initiated at the time the individual is released from active duty into the Reserves. The separatee is given only his Record of Service (DD Form 214) with "To be determined" in the space provided on that form for the designation of the individual's character of separation.
 It is arguable that the applicable statute and regulations require that the officials at a serviceman's separation center give him a Certificate of Service (Form 217A) at the time of his separation, upon the completion of his tour of active duty. See 50 U.S.C.A.Appendix, § 459(a); AR 615-360 Para. 5; SR 615 360-1 Paragraphs 10, 11, 13.
 
 
 [7]
 See cases cited in note 5 supra
 
 
 
 10
 LUMBARD, Circuit Judge (concurring).
 
 
 11
 For the reasons set forth in Judge Sugarman's opinion, 136 F.Supp. 850 and on the authority of Blackmar v. Guerre, 1952, 342 U.S. 512, 72 S.Ct. 410, 96 L. Ed. 534; Burns v. McCrary, 2 Cir., 1956, 229 F.2d 286; Reeber v. Rossell, 2 Cir., 1952, 200 F.2d 334; Marshall v. Wyman, D.C.N.D.Cal.1955, 132 F.Supp. 169; Harris v. Bayer, D.C.E.D.Pa.1955, 18 F. R.D. 392; cf. United States ex rel. Vassel v. Durning, 2 Cir., 1945, 152 F.2d 455, the order of the District Court denying appellant's motion for a temporary injunction and the order of the District Court granting respondents' cross-motion to dismiss the complaint should be affirmed.
 
 
 12
 I refrain from concurring in Judge FRANK'S discussion of other matters as it seems to me that such discussion is not necessary to the decision and regards matters concerning which I do not feel that the Court is or needs to be fully informed.