**LAMB v. PATTERSON, Secretary of War.**

No. 9041.

United States Court of Appeals
District of Columbia.

Argued Feb. 4, 1946.

Decided March 25, 1946.

Mr. Roger Robb, of Washington, D.C., with whom Messrs. Samuel T. Ansell and Mahlon C. Masterson, both of Washington, D. C., were on the brief, for appellant.

Mr. Daniel B. Maher, Assistant United States Attorney, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, and Sidney S. Sachs, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellees. Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellees.

Before EDGERTON, WILBUR K. MILLER, and PRETTYMAN, Associate Justices.

WILBUR K. MILLER, Associate Justice.

This appeal presents for review an order of the District Court of the United States for the District of Columbia which granted the appellees' motion to dismiss the appellant's complaint. The suit was filed by the appellant to obtain a judicial ruling that he is an honorably discharged soldier of World War I, and a mandatory direction to the appellees to issue to him a certificate of honorable discharge as such.

The factual situation which gave rise to the controversy stretches back more than a quarter of a century. The appellant, James John Lamb, a resident of Davenport, Iowa, was notified on November 9, 1918, by his local draft board that he had been selected for immediate military service. He was ordered to report to the board at 9:00 a. m. on November 11 for military duty. The notice which he received informed Lamb that "from and after the day and hour just named you will be a soldier in the military service of the United States." The appellant reported at the designated time and place and was then notified orally by the local board that he was a soldier in the Army of the United States. By a written warrant of appointment, he was made the leader and special police officer of a contingent of drafted men during the journey from Davenport to Camp Dodge. Pursuant to an oral order given to him later on the morning of November 11, Lamb assembled his contingent and proceeded with it from the office of the local board for the purpose of entraining for the camp.

Before the appellant had actually boarded a train, however, he was told orally that because of the armistice with Germany draft calls had been cancelled. But he was also told that he was still a soldier, subject to military orders and to laws and regulations governing the army, and that he must hold himself in readiness at all times to obey further orders.

On November 15, 1918, Lamb received by mail from his local board a communica-

tion dated November 14, 1918, the text of which is shown in the margin.[1] This action was taken by the local board pursuant to an order of the President, issued through the Provost Marshal General, dated November 11, 1918, which contains the following language:

"The President further directs that all registrants who are already inducted into the Army under these calls because of the fact that the day and hour specified in form ten twenty-eight or entered in column twenty-four of the classification list have arrived, but who have not been actually entrained for a mobilization camp, shall be, and they are hereby, discharged from the Army."

On or about January 26, 1919, Lamb received a certificate styled "Discharge from Draft" which had been issued at and mailed from Camp Dodge and which was dated as of November 14, 1918. The text of this document is set out in the margin.[2] Accompanying it was a Quartermaster's check for $4.00 bearing the notation "Final Pay," which was in payment for service with the army for the period from November 11, 1918, to November 14, 1918, both dates inclusive. From that time on Lamb represented himself as having been honorably discharged from the Army of the United States.

A statute of Iowa grants tax exemption on "the property not to exceed Five Hundred Dollars in actual value of any honorably discharged soldier, sailor, marine or nurse of the War with Germany." After the enactment of this exemption Lamb annually applied to the taxing authorities of Scott County, Iowa, the place of his residence, for exemption thereunder, and until the year 1940 each annual application was granted by those authorities. But when he presented his verified claim for the statutory exemption for the year 1941, the Board of Supervisors of Scott County claimed that he had not been a soldier, that he had not been honorably discharged from the army, and that his status was merely that of one who had been discharged from the draft.

Immediately following this occurrence, Lamb sued the members of the Board of Supervisors in the state court at Davenport, alleging that he was an honorably discharged soldier of the war with Germany and that the supervisors had acted illegally in denying him the tax exemption. He prayed that the court declare him to have been honorably discharged and, therefore, entitled to the tax exemption. In May 1942 the Scott County District Court adjudged that "James J. Lamb is an honorably discharged soldier of the War with Germany which frequently is called World War I." Thereafter the Board of Supervisors appealed to the Supreme Court of Iowa and on March 9, 1943, that court reversed, a majority and a dissenting opinion being filed. In the course of the majority opinion it was said, "we feel there is a serious doubt upon the question whether the appellee is an honorably discharged soldier of the War with

[1] "By order of the Provost Marshal General acting under the instruction of the President of the United States, all outstanding calls for the army, general and special, and orders for individual induction into the army, have been cancelled, and all registrants who were inducted but not entrained under such calls are discharged from the army.

"The foregoing cancellation and discharge does not affect any call or competent order for induction into the navy or marine corps. All registrants whose calls are cancelled, or who are discharged, revert to their status as registrants and are subject to the provisions of the Selective Service Law like other registrants, and are subject to future calls. Accordingly all registrants who received notices to appear for induction under such calls, or who appeared and were inducted but not entrained, are notified that the undersigned Boards have cancelled all such notices and orders of induction, and that such cancellation on cases of registrants who were inducted has the effect of an honorable discharge from the army."

[2] "To all whom it may concern:

"This is to Certify, That *James John Lamb* is hereby discharged from the military service of the United States by order of the President, dated November 11, 1918.

"Said *James John Lamb* was inducted into the service from the jurisdiction of the Local Board for Div. #1, Davenport, Iowa, on the 11th day of November 1918.

"While this certificate discharges the person named herein from his present obligation to serve in the Army, it does not operate as a permanent bar to his subsequent entrance into the military service. Under Section 5 of the Act of May 18, 1917, all registered persons remain subject to the draft unless exempted or excused as in that Act provided. Therefore, this discharge does not excuse the holder from obedience to the process of Exemption Boards."

Germany within the meaning of section 6946, Code of Iowa 1939."[3] A rehearing was denied on June 15, 1943.

On November 2, 1943, the appellant applied to the Adjutant General of the United States Army for a certificate of honorable discharge. The request was denied on November 20, 1943. Lamb endeavored to get the Adjutant General to reconsider, but that official finally informed him on February 29, 1944, that he adhered to his original denial of the claim. Lamb then filed suit in the District Court of the United States for the District of Columbia against Henry L. Stimson, then Secretary of War, and J. A. Ulio, then The Adjutant General of the United States Army. In his complaint he recited in detail the facts which we have summarized, and prayed that the court declare that he had been a soldier in the Army of the United States from November 11, 1918, to November 14, 1918, both dates inclusive, and that during that period his conduct was such as to warrant his reenlistment in the army and that his service was honest and faithful; that he was not rejected because of physical unfitness; that he is an honorably discharged soldier of the war with Germany and that he is entitled to a certificate showing that his service in the army was honest and faithful; and that he was honorably discharged from military service by reason of the order of the President, dated November 11, 1918. He further prayed that the court mandatorily direct the defendants to issue to him "a proper and lawful discharge from the Army of the United States as by law provided. * * *"

The District Court granted the defendants' motion to dismiss on the ground that the complaint failed to state a cause of action upon which relief could be granted. This appeal followed.

The appellees, who were defendants below, argue that the certificate of Discharge from Draft was in accordance with law and regulation; that the issuance of an honorable discharge certificate is a discretionary act which cannot be controlled by mandamus; and that the appellant was guilty of laches.

■ The first question, therefore, to which we address ourselves is whether the certificate of Discharge from Draft, Form No. 638–1, A.G.O., which was issued to the appellant, was in accordance with law and regulation. There can be no question that Lamb was an enlisted man, lawfully inducted into the military service of the United States. He had received an order of induction, which informed him that from and after 9:00 a. m., November 11, 1918, he would be a soldier in the military service of the United States. The President's order of November 11, 1918, recites that men who have already been inducted into the army because of the arrival of the day and hour specified in the order of induction, but who have not been actually entrained for a mobilization camp, "are hereby discharged from the Army." The Discharge from Draft reads that Lamb "is hereby discharged from the military service of the United States." He was paid for four days of military service.

■ It is provided by the 108th Article of War, Act of August 29, 1916, ch. 418, 39 Stat. 668, now 10 U.S.C.A. § 1580, that "No enlisted man, lawfully inducted into the military service of the United States, shall be discharged from said service without a certificate of discharge signed by a field officer of the regiment or other organization to which the enlisted man belongs, or by the commanding officer when no such field officer is present * * *." By the Selective Draft Act of May 18, 1917, ch. 15, 40 Stat. 70, 50 U.S.C.A.Appendix § 201 et seq. persons drafted into the service of the United States were made subject to the laws and regulations governing the Regular Army; hence the quoted portion of the 108th Article of War applied to the appellant.

The Secretary of War was authorized by the Act of June 8, 1872 (17 Stat. 283, 5 U.S.C.A. § 22) to promulgate regulations providing for such forms of discharge as he thought reasonably required. Under this authority, the Secretary of War promulgated paragraph 150 of the Army Regulations providing for three classes of discharge certificates: honorable discharge, discharge, and dishonorable discharge.[4]

■ This regulation continued to be the sole pronouncement of the Secretary of

---

3 Lamb v. Kroeger, 233 Iowa 730, 8 N. W.2d 405, 409.

4 Paragraph 150 of the Army Regulations is as follows:

"150. Blank forms for discharge and final statements will be furnished by the Adjutant General's Department and will be retained in the personal custody of com-

War concerning forms of certificates of discharge until the passage of the Selective Draft Act made it necessary, in official opinion, to provide other forms of certificates. By a regulation dated January 12, 1918, certificates called "Discharge from Draft" were authorized for those who were inducted but failed to pass the physical examination at the place of mobilization. This regulation has no application to the case before us, as the appellant was not rejected for physical unfitness. As far as the appellant was concerned, at the time of his separation from the military service, official regulations authorized only the three forms of discharge provided for by paragraph 150 of the Army Regulations. Hence, the certificate of discharge issued to the appellant should have been on one of those three forms; and that which would have been appropriate should have been determined under paragraph 150 of the Regulations.

The appellees place reliance on a regulation promulgated December 4, 1918, which provides for registrants who, although inducted by local boards, had not arrived at a place of mobilization when they were discharged under the President's order of November 11, 1918. By this regulation, there was to be issued to such persons "a discharge certificate on a new blank form (Form No. 638–1, A.G.O.)." The certificate of discharge which was received by the appellant was on this form. It was mailed to him from Camp Dodge, and was received by him at Davenport, Iowa, on or about January 26, 1919, although it purports to have been issued at Camp Dodge on November 14, 1918.

■ It should be noted that the regulation of December 4, 1918, refers to Form No. 638–1, A.G.O., as "a new blank form." Such a certificate of discharge, not having been officially authorized prior to December 4, 1918, should not have been issued to soldiers who were discharged prior to

that date and who were entitled, under law and regulation, to the appropriate form of the three kinds of certificates authorized by paragraph 150 of the Army Regulations. It is obvious here that Lamb's certificate was antedated to November 14, 1918, by the officer who actually issued it in January 1919. That officer was the first to make the official error which has been persisted in by the appellees since that time. It is quite clear that the appellant was and is entitled to a certificate of honorable discharge,[5] unless it was within the official discretion of the Secretary of War, on November 14, 1918, to issue to him some other form of discharge certificate, or unless his claim to relief in this action is barred by laches.

We proceed to the second contention of the appellees which is that the issuance of an honorable discharge certificate is a discretionary act and not subject to control by mandamus. It is urged upon us that it rests in the sound discretion of the Secretary of War whether to issue a certificate of honorable discharge to a soldier separated from the service, and that we should not substitute our judgment for that of the Secretary as to the quality of appellant's service and his character as exhibited during that service.

■■ It must be conceded that the determination originally of the several forms of certificates of discharge was a proper exercise of the executive authority of the Secretary; but, having exercised that authority and having defined the three types of certificates to be issued, and having by regulation established standards to govern the selection of the proper form to be issued to each discharged soldier, the executive authority of the Secretary had been fully exercised, and the duty of the army officer at Camp Dodge in issuing a certificate of discharge to the appellant was simply ministerial, as though the regulation had been a statute.[6] That officer did not have, and indeed the Secretary

---

pany commanders. Discharge certificates will be used in the discharge of enlisted men and for no other purpose, and will be of three classes: for honorable discharge, for discharge, and for dishonorable discharge.

"They will be used as follows:

"1. The blank for honorable discharge, when the soldier's conduct has been such as to warrant his reenlistment and his service has been honest and faithful.

"2. The blank for dishonorable dis-

charge, for dishonorable discharge by sentence of a court martial or a military commission.

"3. The blank for discharge when the soldier is discharged except as specified under sections 1 and 2 of this paragraph (C. A. R. Nos. 14 and 34)."

5 Davis v. Woodring, 72 App.D.C. 83, 111 F.2d 523.

6 Arizona Grocery Co., v. Atchison T. & S. F. R. Co., 284 U.S. 370, 386, 52 S. Ct. 183, 76 L.Ed. 348.

himself would not have had, the right arbitrarily to issue to Lamb any form of discharge certificate other than that which was appropriate to his status according to the standards set up in paragraph 150 of the Army Regulations. True it is that the Secretary again could exercise his executive authority to provide for additional and different forms of discharge, as he did by the regulations of January 12, 1918, and again on December 4, 1918; but, once standards are erected by regulation, it is merely ministerial to observe them. Consequently, it is incorrect to say, as the appellees do, that whether the appellant is entitled to a certificate of honorable discharge rests in the sound discretion of the Secretary of War.[7]

 The court does not substitute its judgment for that of the Secretary as to the quality of appellant's service and his character as exhibited during that service. The Secretary determined, by paragraph 150 of the Army Regulations, that the blank for honorable discharge must be used "when the soldier's conduct has been such as to warrant his reenlistment and his service has been honest and faithful." The appellant's complaint, against which the appellees' motion to dismiss was leveled, alleges that the appellant's conduct was such as to warrant his reenlistment and that his service had been honest and faithful. The motion to dismiss has the effect of admitting these facts. So, for the purpose of considering the motion to dismiss, it is the Secretary's considered judgment, expressed in paragraph 150, that Lamb is entitled to an honorable discharge.

Reid v. United States, 161 F. 469, cited by the appellees, was decided by a district court in New York in 1908. In that opinion the court said that the exact method of a soldier's discharge and the kind of character that should be given him, not being regulated by statute, necessarily must be left to the discretion of the executive officer having power to grant some kind of discharge; and that army regulations do not bind the Secretary of War

who promulgates them. We do not regard the citation as authority here for several reasons. Reid was discharged without honor for having participated in a riot, and filed suit to recover the pay and emoluments which would have accrued to him from the date of his discharge to the expiration of his three-year term of enlistment. It will thus be seen that the statement in the opinion to which we have referred was obiter dictum. Reid's writ of error was dismissed by the Supreme Court on procedural grounds,[8] and no reference was made to the gratuitous statement of the district court cited by the appellees here in support of their position. Furthermore, the statement is not in accord with the view of this court expressed in Davis v. Woodring, supra, and we do not regard it as sound.

 It remains only to consider whether the remedy sought by the appellant is barred by laches, as argued by the appellees. Twenty-five years elapsed from the time the appellant received his discharge certificate until he first attempted to obtain a certificate of honorable discharge, as the appellees pointed out. But laches is not like limitation, a mere matter of time. Although the appellant was discharged on November 14, 1918, and received a certificate of Discharge from Draft on January 26, 1919, he was told on November 15, 1918, by his local board that the Presidential order of November 11, 1918, discharging from the army all registrants who had been inducted but not entrained, had "the effect of an honorable discharge from the army."[9] Until 1941, the appellant had no basis for supposing that there was any doubt concerning his status as an honorably discharged soldier. When that status was challenged for the first time, he manifested extraordinary diligence in asserting his rights. Moreover, the appellees do not claim that there has been any change of condition or relations since 1918 because of which it would be an injustice to them to permit the appellant to assert his rights now. Bearing in mind the essential elements of laches,[10]

---

[7] Miguel v. McCarl, 291 U.S. 442, 54 S.Ct. 465, 78 L.Ed. 901.

[8] 211 U.S. 529, 29 S.Ct. 171, 53 L.Ed. 313.

[9] Note 1 supra.

[10] In Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 874, 36 L.Ed. 738, will be found the following discussion of laches by the Supreme Court:

"The cases are many in which this defense has been invoked and considered. It is true, that by reason of their differences of fact no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish

it is our opinion that the appellant's action is not barred by that defense.

Since it is our view that in his complaint the appellant pleaded facts which, if sustained by proof, entitled him to the relief sought, it follows that the District Court erred in granting the appellees' motion to dismiss.

Reversed.

---

them in a proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condi-

tion or relations during this period of delay it would be an injustice to the latter to permit him to now assert them."