**John and Melissa GRAYBEAL et al., Plaintiffs,**

**v.**

**AMERICAN SAVINGS & LOAN ASSOCIATION et al., Defendants.**

**Civ. A. No. 265-71.**

United States District Court, District of Columbia.

April 24, 1973.

8

John F. Graybeal, Benny L. Kass, William A. Dobrovir, Bruce J. Terris, Washington, D. C., for plaintiffs.

Charles J. Steele, Washington, D. C., for defendant American Savings & Loan Association.

Leo William Dunn, Jr., West Hyattsville, Md., for Capital City Savings & Loan Association.

Charles L. Wilkes, Washington, D. C., for defendant Columbia Federal Savings & Loan Association.

James A. Crooks, Washington, D. C., for defendant District Building & Loan Association.

Joseph A. Rafferty, Jr., Washington, D. C., for defendant Eastern Federal Savings & Loan Association.

Richard H. Mayfield, Washington, D. C., for defendant Equitable Savings & Loan Association, Inc.

Milton I. Baldinger, Washington, D. C., for defendant First Federal Savings & Loan Association of Washington.

Leonard S. Melrod, Dorothy Sellers, Washington, D. C., for defendant Guardian Federal Savings & Loan Association.

John P. Arness, David J. Hensler, David Scrivener, Washington, D. C., for defendant Home Federal Savings & Loan Association.

Bernard I. Nordlinger, Washington, D. C., for defendant Interstate Building Association.

Fred M. Vinson, Jr., Michael Bentzen, Washington, D. C., for defendant Jefferson Federal Savings & Loan Association.

Thomas S. Jackson, Washington, D. C., for defendant Liberty Savings & Loan Association.

William Joseph H. Smith, Washington, D. C., for defendant National Permanent Savings & Loan Association.

George J. Goldsborough, Jr., Easton, Md., for defendant Northwestern Federal Savings & Loan Association.

John P. Arness, David J. Hensler, Samuel E. Scrivener, Jr., Washington, D. C., for defendant Perpetual Building Association.

John C. Joyce, Hyattsville, Md., for defendant Prudential Building Association.

John P. Arness, David J. Hensler, Marshall P. Johnson, Washington, D. C., for defendant Washington Permanent Savings and Loan Association.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court as a result of a complaint alleging multiple causes of action for breach of contract, unjust enrichment, usury, violations of the Consumer Credit Protection Act (Truth-in-Lending) and violations of the Sherman (Antitrust) Act.

Plaintiffs herein are attorneys (and their wives) who borrowed money from one of the Defendant lending institutions and whose loans were secured by a first lien on their personal homes or other residential real property. The Defendants named herein are various sav-

ings and loan institutions doing business in the District of Columbia.

Plaintiffs have brought this suit as a class action on behalf of all persons in the Washington, D. C., metropolitan area who have borrowed money secured by a first lien on their homes from any of the Defendant lending institutions.

Plaintiffs allege that they are required to pay in advance each month to the Defendants one-twelfth of the annual real estate taxes, assessments and insurance premiums for which they are liable. It is further alleged that while the Defendants formerly deducted such monthly payments from borrowers' principal debt balances, thereby reducing the total amount of interest payable for the term of the loan, ("Capitalization method"), the Defendants over the last few years have ceased to do so, and now place such payments in non-interest bearing "escrow accounts."

The gravamen of Plaintiffs' complaint is that the change-over from the "capitalization method" to the "escrow method" was a unilateral change in the terms of their respective loan contracts and hence a breach of those contracts by Defendants. Plaintiffs further allege that Defendants are being unjustly enriched by the use of the monies placed in the escrow accounts, that the true effective rate of interest of those loans bearing a purported rate of interest of 8% per annum is increased by the escrowing practice, and that the loans are thereby rendered usurious.. They further allege that the failure to include these escrowed monies in the computation of the annual percentage rate violates the consumer credit disclosure provisions of the Truth-in-Lending Act. Finally, Plaintiffs allege that the Defendants have engaged in an unlawful conspiracy in restraint of trade in violation of the Sherman (Antitrust) Act.

The specific four loans at issue are as follows:

1. Plaintiffs Graybeal borrowed $13,000 from Defendant Perpetual on July 1, 1965. The loan was secured by a first lien on residential real property and purported to bear interest at 5¾% per annum. (Graybeal First Loan).

2. Plaintiffs Graybeal borrowed $25,000 from Defendant Perpetual on February 4, 1970. This loan was secured by a first lien on the Graybeal home and purported to bear interest at 8% per annum. (Graybeal Second Loan).

3. Plaintiffs Terris borrowed $33,000 from Defendant Jefferson Federal on January 15, 1964. The loan was secured by a first lien on the Terris' home, and purported to bear interest at 5¾% per annum.

4. Plaintiffs Kass borrowed $25,900 from Defendant National Permanent on June 10, 1966. The loan was secured by a first lien on the Kass' home and purported to bear interest at 5¾% per annum.

Jurisdiction is alleged under 28 U.S.C. § 1337, 15 U.S.C. §§ 15, 26 and 1640, and 11 D.C.Code § 521.

In response to the Complaint, fifteen Defendants[1] filed the following essentially similar motions: (1) to dismiss the treble damage portion of Plaintiffs' fifth cause of action for failure to state a claim upon which relief can be granted; (2) to grant summary judgment with respect to the fifth cause of action or for severance and separate consideration thereof; and (3) to dismiss Plain-

---

[1]. American Savings & Loan, Capital City Savings & Loan, Columbia Federal Savings & Loan, District Building & Loan, Eastern Federal Savings & Loan, Equitable Savings & Loan, Guardian Federal Savings & Loan, Home Federal Savings & Loan, Interstate Building Association, Jefferson Federal Savings & Loan, National Permanent Savings & Loan, Northwestern Federal Savings & Loan, Perpetual Building Association, Prudential Building Association, and Washington Permanent Savings and Loan Association.

tiffs' third and fourth causes of action because the pertinent government regulations specifically exclude the challenged transactions from Truth-in-Lending coverage. One Defendant answered the Complaint;[2] another Defendant answered and then moved for summary judgment as to all the causes of action;[3] and one Defendant additionally moved to dismiss the Complaint as being barred by laches and the contract agreement itself.[4]

Other outstanding motions which will be decided herein are:

1. Plaintiffs' oral and written motions to certify the instant case a class action under Rule 23 of the Federal Rules of Civil Procedure;

2. Defendants Perpetual, Home Federal and Washington Permanent's motion to strike any and all class action allegations from the Complaint (joined in by Defendants American and Capital City);

3. Motions to intervene filed by Plaintiffs on behalf of certain homeowner-borrowers;

4. Motions of various Defendants to dismiss for lack of "standing"; and

5. Plaintiffs' motion to file an "amended complaint" as to those two Defendants who answered the original complaint (see n. 2 and 3, *supra*).

For the convenience of all concerned, the Court will preliminarily summarize its rulings and refer the reader to the appropriate page and section wherein that ruling is discussed.

## CLASS ACTION ISSUE

1. Plaintiffs have failed to meet the prerequisites for maintenance of a class action under Rule 23 of the Federal Rules of Civil Procedure because they have failed to show to the satisfaction of the Court that they could adequately protect the interests of the proposed class while concurrently acting as attorneys for the class in the same action. Part I, p. 13.

2. Even if Plaintiffs had met the prerequisites for maintenance of a class action, certification would not be proper under either Rule 23(b)(2) or (b)(3) because:

a. Rule 23(b)(2) applies only to cases in which the appropriate final relief sought is injunctive; it does not apply to this case, in which the relief sought relates predominantly to money damages. Part II, Sec. A, p. 14.

b. Rule 23(b)(3) requires a commonality of issues which is lacking herein and, furthermore, a class action is inferior to other available methods for the fair and efficient adjudication of the issues. Part II, Secs. B and C, pp. 15, 16.

c. The Truth-in-Lending Act causes of action are particularly inappropriate for class action treatment because a class action is not superior to the available method of recovery provided by the Act for the fair and efficient adjudication of the controversy. Part II, Sec. C, p. 16.

d. Certification of this action as a class action would not necessarily be in the best interest of the community. Part III, p. 17.

## OTHER OUTSTANDING MOTIONS

3. Plaintiffs' antitrust cause of action is severed for separate consideration because the factual and legal issues presented by this cause of action are quite different from those presented by Plaintiffs' other claims herein, and that such severance is necessary to avoid possible prejudice and to expedite resolution of all issues. Part IV, p. 17.

4. The motions to intervene are denied pursuant to the provisions of Rule 24 because the applicants' rights are

2. First Federal Savings & Loan.

3. Liberty Savings & Loan.

4. Perpetual Building Association.

separate and distinct from the rights alleged by the Plaintiffs herein, and such intervention would only serve to increase the already large number of individual issues still to be resolved. Part V, p. 17.

5. Those Defendants with whom Plaintiffs do not have loan contracts are dismissed (except from the antitrust cause of action) because Plaintiffs have no standing to sue them. Part VI, p. 18.

6. Defendants' motions to dismiss Plaintiffs' Truth-in-Lending causes of action are granted because the Act itself and the pertinent regulations thereunder specifically exempt escrows for the future payments of real estate taxes and insurance from the computation of the annual percentage rate. Part VII, p. 18.

7. Plaintiffs' motion to file an amended complaint is granted insofar as the amended complaint further alleges fraudulent concealment under the antitrust cause of action, and fraud and breach of trust as a seventh cause of action. Part VIII, p. 20.

8. Defendant Perpetual's motion to dismiss the Complaint as being barred by laches and the contract itself is denied subject to the exception that Plaintiffs Graybeal cannot proceed against Defendant Perpetual for implied breach of contract as to the second Graybeal loan because the Deed of Trust specifically includes a provision stating that Defendant will not be required to capitalize real estate tax or insurance prepayments. Part IX, p. 21.

## THE CLASS ACTION ISSUE

I. *Plaintiffs Have Not Met the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure Because They Have Failed to Demonstrate That They Will Fairly and Adequately Protect the Interests of the Class.*

█ Rule 23(a) of the Federal Rules of Civil Procedure lists four preliminary requirements which must be met before an action may be maintained on behalf of a class. Those requirements are:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

It is within the discretion of the Court to determine whether there has been compliance with the requirements of Rule 23(a), and plaintiffs, as the parties seeking class action certification, bear the burden of demonstrating that each requirement has been met.[5] In the instant case, the Court is of the opinion that plaintiffs have failed to sustain that burden.

█ Assuming Plaintiffs have met the first three requirements of Rule 23(a), it is evident that they have not met the fourth requirement of the Rule in that they have failed to demonstrate to the Court's satisfaction that they will fairly and adequately protect the interests of the class. Plaintiffs have placed themselves in the dual roles of attorneys for, and representatives of, the proposed class. These dual roles are inherently fraught with potential conflicts of interests. In any class action there is always the temptation for the attorney for the class to recommend settlement on terms less favorable to his clients because a large fee is part of the bargain. The impropriety of such a position is increased where, as here, the attorney is also the

---

5. See generally, Wright and Miller, Federal Practice and Procedure: Civil § 1759, at 575 and cases cited at n. 72; at 578 and n. 86.

representative who brought the action on behalf of the class, and where, as here, the potential recoveries by individual members, including representatives, of the class are likely to be very small in proportion to the total amount of recovery by the class as a whole. Thus Plaintiffs may stand to gain little as class representatives, but may gain very much as attorneys for the class.[6]

The Court notes that this "dual relationship" problem has come under increasing scrutiny by other members of the judiciary. In Shields v. National Bank of Arizona Valley, the court stated:[7]

"[T]he court further feels that Shields has not demonstrated competence to represent the class because he seeks to be not only attorney for the class and be awarded a fee for his representation, he seeks in the same action, personal relief. The practice involved does not seem to the court to comport with the high quality of objectivity, duty and integrity required of lawyers practicing in this court and elsewhere. This case seems to involve a questionable method of soliciting legal business and such solicitation should not be encouraged."

■ Due process demands that the rights of potential class members be protected. These rights can only be protected by adequate and proper class representatives. Plaintiffs have not shown themselves to be such.[8]

II. *In Addition, Plaintiffs Have Not Demonstrated That the Instant Case Is Maintainable as a Class Action*

Under Rules 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure Because (A) They Are Not Seeking Predominantly Injunctive Relief, (B) They Have Not Shown That Common Questions of Law or Fact Predominate, and (C) They Have Not Shown That a Class Action Is a Superior Method for the Fair and Efficient Adjudication of the Controversy.

A. *Certification of the Case at Bar Is Not Proper Under Rule 23(b)(2) of the Federal Rules of Civil Procedure Because Plaintiffs Are Not Seeking Predominantly Injunctive Relief.*

■ While denial of class action certification under Rule 23(a) would be sufficient under normal circumstances, Plaintiffs have raised questions under other provisions of Rule 23 which require further comment. One of these questions concerns the propriety of class certification under Rule 23(b)(2). Rule 23(b)(2) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and:

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole;"

It is obvious from reading the Rule that it specifically concerns actions brought for injunctive and/or declaratory relief. As stated by the Rules Ad-

---

6. In this regard, the language of Chief Judge Lumbard in his dissent in Eisen v. Carlisle and Jacquelin, 391 F.2d 555 (2d Cir. 1968), is particularly appropriate. He stated: "[T]he only persons to gain from a class suit are not potential plaintiffs, but the attorneys who will represent them." 391 F.2d at 571.

7. 56 F.R.D. 448 (D.Ariz.1972); See also Shields v. First National Bank of Arizona, 56 F.R.D. 442 (D.Ariz.1972).

8. There is already an inherent conflict between plaintiffs' duties to protect the interests of the class and their duties as counsel, such conflict having arisen as the result of a tender of settlement joined by certain defendants and involving substantial attorneys fees. That tender of settlement deals only with prospective relief and does not include the payment of damages.

visory Committee Note, "The subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages."[9] Plaintiffs do seek injunctive relief, but the "predominant" relief sought is money damages in the forms of interest, Truth-in-Lending double damages and Antitrust treble damages.[10] Accordingly, 23(b)(2) certification is not appropriate.

B. *Certification of the Case at Bar Is Not Proper Under Rule 23(b)(3) of the Federal Rules of Civil Procedure Because Plaintiffs Have Not Demonstrated That Questions of Law or Fact Common to the Members of the Proposed Class Predominate Over Those Questions Affecting Only Individual Members.*

■ Plaintiffs further contend that class action certification is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure, which provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and:

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . . judication of the controversy. . . ."

It is clear from a study of the alleged causes of action presently under discussion that while there may be questions of law or fact common to the members of the proposed class, such questions do not predominate over those questions affecting only individual class members.

Plaintiffs' breach of contract and unjust enrichment causes of action clearly involve questions of law or fact which will necessarily require answers based on each individual loan contract between a particular borrower and a particular lending institution. Some representative questions which might be raised as to *each individual contract* are: (1) whether the written contract specifically referred to utilization of the "capitalization" or the "escrow" method? (2) whether the individual lending institution gave the borrower an option to make monthly advance payments for taxes and insurance or to pay the taxes and insurance on his own? (3) whether such choice, if any, was a meaningful one for that particular borrower? (4) whether the individual borrower consented to the change, if any, from "capitalization" to "escrow"? (5) what were the understandings between the individual borrower and his loan officer which might have some bearing on whether the transaction was unconscionable under the circumstances? These are but a few of the individual questions which predominate over any questions common to the class. By their very nature, the claims for breach of contract and unjust enrichment do not lend themselves to class action treatment.

Plaintiffs' claims as to usury and fraud similarly fail the test of Rule 23(b)(3). Again, the individual questions predominate over questions common to the proposed class. Whether the interest charged on a particular loan contract was usurious must be determined borrower by borrower, contract by contract. Moreover, there are serious choice of law questions raised through the involvement of various jurisdictions with differing usury laws and statutes of limitation. There may even be a question as to whether non-interest-bearing escrow accounts arising in Maryland are at all governed by

9. 28 U.S.C.A. Rule 23, Note at 298.

10. See Eisen v. Carlisle and Jacquelin, *supra*, 391 F.2d at 564.

Maryland's usury laws.[11] The individual inquiry required by the Court in determining which law governs which transaction renders class action treatment totally inappropriate.

C. *A Class Action Is Not Superior To Other Available Methods for the Fair and Efficient Adjudication of the Case at Bar.*

As quoted above, Rule 23(b)(3) requires, in addition to commonality of questions of law or fact, that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." Such superiority is lacking in the instant case.

The use and misuse of Rule 23, and the complex problems attendant thereto, have been the subject of great concern in recent years by both the bench and bar. For example, the Report and Recommendations of the Special Committee on Rule 23 of the Federal Rules of Civil Procedure of the American College of Trial Lawyers contains the following observation at pages 5 and 6:[12]

". . . Rule 23, as written and as applied over the last half dec de, has failed to achieve its purposes. We suggest that in the areas of judicial economy and fairness to the parties, the experienced results have been directly contrary to the intended purposes. The (b)(3) class suit has mandated heavy expenditures of judicial time, effort and expense. The expenditures have been sustained only by sacrificing procedural and substantive fairness to the party opposing the class. Nor does it appear that these burdens can in any sense be justified by the limited benefits accruing to class claimants."

The problems of "judicial economy and fairness to the parties" are certainly present in the case at bar. As the Court has previously noted, the essential questions of fact herein are individual in nature and can only be fairly and judiciously resolved on a case by case basis. A Judgment on the merits as to plaintiffs' separate and distinct contractual rights can have no *res judicata* or collateral estoppel effect on the claims of other potentially aggrieved parties. Moreover, to declare this action a class action would necessarily spawn a proliferation of subclasses. As a result, the Court would soon be enmeshed in a maze of procedural difficulties from which it might never be extricated.

■ Plaintiffs' Truth-in-Lending claims present a particularly illustrative example of the inappropriateness of class certification under Rule 23(b)(3). The Truth-in-Lending Act provides that an individual plaintiff will recover a minimum of $100, plus attorneys' fees and costs.[13] Thus, the incentive offered by a class action is not necessary to enforce the provisions of the Act because each individual member of the proposed class has an adequate remedy by means other than a class action. More importantly, because of the proposed $100 minimum recovery for each member of the class, the savings and loan industry may suffer "a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant."[14] Under these circumstances, the Court cannot find that a class action is "superior" to other

---

11. See *Bettum v. Montgomery Federal Savings & Loan Association*, 262 Md. 360, 277 A.2d 600 (1971).

12. The Report and Recommendations were approved by the Board of Regents on March 15, 1972.

13. 15 U.S.C. § 1640(e).

14. *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972) ; see also *Shields v. First National Bank, supra; Wilcox v. Commerce Bank*, 55 F.R.D. 134 (D.Kan.1972) ; *Rogers v. Coburn Finance Corp.*, 54 F.R.D. 417 (N.D.Ga.1972).

available methods for the fair adjudication of the controversy concerning Plaintiffs' Truth-in-Lending claims.[15]

III. *Certification of This Action as a Class Action Would Not Necessarily Be in the Best Interest of the Community.*

██ There is a final, but vital, reason why a class action of this type is not in the interest of justice. In a case of this nature, the Court must necessarily survey the broad spectrum of interests involved, and determine where the community's interests truly lie. The social utility of the instant suit is not as great as it might first appear to the casual observer. The defendant lending institutions are *mutual* organizations which serve the financial needs of the people owning homes in the District. The Court is also aware that we are in the midst of a "tight money" period. A large class action recovery might well have a deleterious effect upon the area lending market at a time when the community can least afford it. Therefore, even if Plaintiffs had been able to meet the provisions of Rule 23, the interest of the community may be sufficient, in itself, to preclude class action.

## OTHER OUTSTANDING MOTIONS

IV. *Plaintiffs' Alleged Causes of Action Concerning Violations of the Sherman Act Will Be Severed Because the Distinct Factual and Legal Issues Presented by that Count of the Complaint Differ Significantly from the Issues Alleged in the Other Counts.*

██ Pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, the Court in its discretion has determined to sever Plaintiffs' fifth cause of action for separate consideration.

The factual and legal issues presented by this cause of action are quite distinct from those presented by Plaintiffs' other claims. Plaintiffs allege an unlawful combination and conspiracy in restraint of interstate trade and commerce, and an unlawful combination and conspiracy to monopolize interstate trade and commerce in the District of Columbia, all allegedly in violation of sections 1, 2 and 3 of the Sherman Act, 15 U.S.C. §§ 1, 2 and 3. Separate consideration of these claims will avoid possible prejudice, and will be conducive to the expeditious resolution of all issues herein.

In passing, the Court notes that all of the Defendants have moved to dismiss and/or for summary judgment as to this cause of action. At present, it appears to the Court that Plaintiffs have not presented sufficient facts in their opposition to Defendants' Motions to demonstrate a genuine issue for trial, as such issue is required by Rule 56(e) of the Federal Rules of Civil Procedure or Local Rule 9(h) of this Court. However, the Court will defer ruling on Defendants' Motions, and will grant Plaintiffs 60 days from the date of this Opinion and accompanying Order within which to complete discovery relevant to this cause of action. Any additional memoranda which the parties wish to submit to the Court will be received at the end of that period.

V. *The Motions to Intervene Will Be Denied Because the Disposition of this Action In Movants' Absence Will Not Impair Their Ability to Protect Any Interests They May Have Against Their Respective Lending Institutions, and Because Intervention Could Only Lead to a Further Proliferation of Individual Issues.*

██ Certain homeowners have moved to intervene in this action under Rule

15. The merits of Plaintiffs' Truth-in-Lending claims are discussed at a later point in this Opinion. 

24(a) of the Federal Rules of Civil Procedure, which requires the allowance of intervention "when the applicant claims an interest relating to the . . . transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest. . . ." Alternatively, they have moved to intervene under Rule 24(b) which provides that intervention may be permitted "when an applicant's claim or defense and the main action have a question of law or fact in common."

Intervention as of right under Rule 24(a) is not mandated in this case because disposition of the action will in no way impair or impede the ability of these applicants to protect any interests they might have against their respective lending institutions. As stated above, the issues involved herein are primarily issues concerning *individual* contracts, and the applicants' rights under their contracts are separate from the rights alleged by the Plaintiffs.

In addition, to permit intervention under Rule 24(b) could only lead to the further proliferation of individual issues which would cause unnecessary complications in the conduct of this case.

VI. *The Various Defendants' Motions to Dismiss For Plaintiffs' Lack of Standing to Bring Suit Against Them Will Be Granted Because No Contractual Relationship Exists Between Plaintiffs and Said Defendants.*

There is no dispute in the record that Plaintiffs actually concluded loan contracts with only three of the defendant lending institutions, *viz.* Perpetual, Jefferson Federal and National Permanent. All of the other named Defendants have filed motions to dismiss the Complaint against them on the ground that Plaintiffs lack "standing" to sue since there have been no contrac-

tual dealings between the Plaintiffs and these Defendants. In view of the Court's previous rulings that (1) the instant case is not maintainable as a class action; (2) Plaintiffs' alleged cause of action under the Sherman Act is to be severed and treated separately; and (3) the motions to intervene will be denied, the Defendants' motions to dismiss are well taken. Accordingly, all Defendants except Perpetual, Jefferson Federal and National Permanent shall be dismissed, with prejudice, as regards those alleged causes of action which have not been severed.

VII. *None of the Defendants Have Violated the Disclosure Provisions of the Truth-in-Lending Act Because the Act Specifically Exempts Funds Held in Escrow for the Payment of Real Estate Taxes and Insurance Premiums from Computation of the Annual Percentage Rate of the Finance Charge.*

The third and fourth counts of Plaintiffs' Complaint essentially allege that Defendants have violated two specific provisions of the Truth-in-Lending Act, namely 15 U.S.C. § 1636 and § 1639. It is alleged that Defendants fail to disclose the true annual percentage rate of the finance charge on loans secured by liens on Plaintiffs' homes, in violation of 15 U.S.C. § 1639(a)(5), and that they fail to disclose the true "amount of credit of which the obligor will have the actual use" in violation of 15 U.S.C. § 1639(a)(1). It is argued that these failures to disclose are the result of Defendants' failure to include in the computation of the annual percentage rate of the finance charge the amounts required to be paid by borrowers into "escrow" accounts for real estate taxes and insurance premiums. The pre-payment of such amounts deprives borrowers of the use of that money, and thus allegedly increases the effective interest rates of their loans. Because this alleged fail-

ure to disclose the true annual percentage rate occurs not only upon the initial extension of credit, but is carried through in each periodic financial statement concerning the loans made by Defendants, Plaintiffs allege a violation of 15 U.S.C. § 1636, relating to disclosure in periodic financial statements.

The defendants have moved to dismiss these Truth-in-Lending claims on the ground that the Act specifically excludes escrows from computation of the finance charge required to be disclosed under the Act. They further contend that Federal Reserve Board Regulation Z specifically excludes these transactions from the purview of the Act. Plaintiffs do not dispute this argument, but contend that the essence of their allegations goes not to the finance charge requirement but to the requirement to disclose the true annual percentage rate of the finance charge both prior to the extension of a loan and in subsequent periodic statements.

Under the Truth-in-Lending Act, the terms "finance charge" and "annual percentage rate" are specifically defined. The finance charge is defined as the sum of all charges payable directly or indirectly to the lending institution incident to the extension of credit. Included in the finance charge are interest, the service or carrying charge, finder's or loan fees, fees for investigations or credit reports and premiums or other charges for any guarantees or insurance protecting the creditor against the obligor's default or other credit loss.[16] The definition of "finance charge" specifically excludes "escrows for future payments of taxes and insurance."[17]

The "annual percentage rate" of the finance charge is defined as "that nominal annual percentage rate which will yield a sum equal to the amount of the finance charge when it is applied to the unpaid balances of the amount financed. . . ."[18]

It is clear from an examination of these statutory provisions that since escrows are specifically excluded from computation of the finance charge, and since the finance charge provides the basis for determining the annual percentage rate, Congress *could not* have meant for escrows to be included in the annual percentage rate. To conclude otherwise is not only logically unsound but mathematically incorrect in view of the interdependent relationship of the finance charge and annual percentage rate under the Act.

Neither the Act nor its legislative history indicate that the opposite is true. The report of the House Committee on Banking and Currency supports the Court's analysis:[19]

"The basic disclosure concept contained in the proposed legislation is to require lenders and merchants to provide consumers with a statement of the 'finance charge' imposed by a creditor in connection with the particular consumer credit transaction. In addition to the statement of the finance charge in dollars, *the creditor is generally required to state the finance charge as an annual percentage rate.* . . ." (emphasis added).

Regulation Z, promulgated by the Federal Reserve Board, provides further support for the proposition that the transactions involved in the instant case are excluded from the purview of the

16. 15 U.S.C. § 1605(a).

17. 15 U.S.C. § 1605(e)(3).

18. 15 U.S.C. § 1606(a).

19. H.R.Rep. No. 1040, 90th Cong. 2d Sess. (1967); 1968 U.S.Code Congressional and Administrative News at p. 1971.

Act. The Regulation provides in pertinent part:[20]

"(e) *Excludable charges, real property transactions.* The following charges in connection with any real property transaction, provided they are bona fide, reasonable in amount, and not for the purpose of circumvention or evasion of this part, *shall not* be included in the finance charge with respect to that transaction: (emphasis added)

\* \* \* \* \* \*

(3) Amounts required to be placed or paid into an escrow or trustee account for future payment of taxes, insurance, and water, sewer, and land rents. . . ."

In addition, the Court notes that two recent federal district court decisions have come to the same conclusion as that reached by the Court here. Stravrides v. Mellon National Bank and Trust Company, 353 F.Supp. 1072 (W.D.Pa.1973) and Williams v. American Savings and Loan Association, C.A. –3–6350–D (N.D.Tex. decided March 26, 1973).

The Court finds, therefore, that wherever the Truth-in-Lending Act requires disclosure of the annual percentage rate of the finance charge, whether it be in periodic statements or prior to the initial extension of credit, the rate need not include in its computation any funds held in escrow for future payments of real estate taxes or insurance premiums. Because such funds are not required to be taken into account in computation of the annual percentage rate, Defendants have not misstated the rate, and have not violated the disclosure provisions of the Act.

In so ruling, the Court wishes to point out that the situation before it is not one involving an unscrupulous loan shark attempting to hide the effective interest rate of a loan through deceptive rate disclosures. There is no ethical impropriety accompanying the practice which Plaintiffs are attempting to discredit, and this is illustrated by the fact that the United States Department of Housing and Urban Development *requires* the maintenance of such escrow accounts for FHA insured mortgages.[21]

Moreover, there is a strong public policy which favors the practice of collecting in advance real estate taxes and insurance premiums. It extends to the borrower a useful and desirable service, much in the same manner that the Federal and state governments "withhold" taxes to insure that funds are available when the taxes become due. Defendants should not necessarily be expected to perform this service *gratis*. That they did so in the past does not render discontinuance unconscionable. Whether they do so in the future will be determined by the Federal Home Loan Bank Board and the competitive forces of the market place.

For the foregoing reasons, the third and fourth counts of Plaintiffs' Complaint will be dismissed for failure to state a claim upon which relief can be granted.

VIII. *The Allegations of Plaintiffs' Amended Complaint Claiming Fraudulent Concealment, Fraud and Breach of Trust Are Stated With Sufficient Particularity Under Rule 9(b) of the Federal Rules of Civil Procedure.*

Plaintiffs have attempted to file an "amended Complaint" as to those Defendants who have not filed an answer to the original Complaint. They have further moved for leave to file the amended Complaint as to the two Defendants who answered the original Complaint.

---

20. § 226.4 of *Regulation Z, 12 C.F.R.* § 226.

21. FHA Regulation G 4015.9, April, 1970.

In so doing, Plaintiffs have amended the caption of the Complaint to include the intervenor-applicants as Plaintiffs. They have also added an allegation of fraudulent concealment under the anti-trust cause of action, and have added a seventh cause of action alleging fraud and breach of trust.

Rule 15(a) of the Federal Rules of Civil Procedure governs amendments. It provides, in pertinent part, that:

"A party may amend his pleading once as a matter of course at any time before a responsive pleading is served . . . . . Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; *and leave shall be freely given when justice so requires.*" (emphasis added).

As regards the amended caption naming the intervenor-applicants as Plaintiffs, the names must be stricken in light of the Court's ruling, *supra*, that the motions to intervene will be denied.

■ As regards Plaintiffs' allegations of fraudulent concealment and fraud and breach of trust, the Court finds that they have been pleaded with sufficient particularity to comport with the general liberal notice pleading requirement of the Federal Rules of Civil Procedure, as well as the more particular requirements of Rule 9(b). Allowing such amendment will in no way impede the efficient resolution of the issues already raised by Plaintiffs' prior causes of action, nor are Defendants in

any way prejudiced in their defense by the amendment.

IX. *Laches Does Not Bar Plaintiffs From Bringing That Part of the Complaint Addressed to the Graybeal First Loan Because It is Disputed Whether Plaintiffs Had Full Knowledge of Their Rights At the Time the Alleged Causes of Action Arose. Nor Does Allowing Plaintiffs to So Assert Their Claims In Any Way Work An Injustice.*

■ Defendant Perpetual Building Association has further moved to dismiss that portion of the Complaint relating to the Graybeal "first loan" [22] as being barred by laches, and to dismiss that portion of the Complaint relating to the second loan [23] for the reason that Plaintiffs Graybeal agreed to the escrow procedure as is specifically set forth in the deed of trust.

To establish the equitable defense of laches it must be shown: [24]

"[T]hat the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in a proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay it would then be an injustice to the latter to permit him to now assert them."

Defendant has failed to establish that it would result in an injustice to allow

---

22. The Graybeal first loan was made on July 1, 1965 and was secured by deed of trust requiring the monthly payment of $\frac{1}{12}$ of annual real estate taxes, but containing no provision as to how the taxes would be handled.

23. The Graybeal second loan was secured by deed of trust dated February 4, 1970. It also required the monthly payment of $\frac{1}{12}$ of annual real estate taxes but *did* contain a provision relating to how the taxes would be handled:

"the Treasurer shall not be required by this Deed of Trust, or the promissory note secured hereby, or otherwise, to apply any such payments made by the borrower on the pre-paid additional charge to reduce the unpaid balance of the loan."

24. Lamb v. Patterson, 81 U.S.App.D.C. 43, 154 F.2d 319, 324 (1946) (quoting from Galliher v. Cadwell, 145 U.S. 368, 372, 12 S.Ct. 873, 874, 36 L.Ed. 738), rev'd on other grounds, 329 U.S. 539, 67 S.Ct. 448, 91 L.Ed. 608 (1947).

Plaintiffs to assert their claims under the first loan some five years after that loan was concluded. Furthermore, Plaintiffs have alleged lack of adequate notice with respect to Defendants' changeover from capitalization to escrow. There is, therefore, a factual dispute as to whether Plaintiffs had knowledge of their rights at that time. Accordingly, laches will not lie.

As to the second loan, however, Defendant's position is well taken that the instrument itself estops Plaintiffs from charging breach of contract, since there is a specific contractual provision relating to the treatment of taxes. The parol evidence rule states that once a writing is executed and appears complete on its face, the writing is presumed to be the final integration of the agreement. It cannot be altered, varied, or contradicted by prior oral or written statements or contemporaneous oral statements.[25] The Complaint does not allege fraud or mistake *in the execution of this specific loan contract,* and, the presumption that the written instrument is in fact the final repository of the agreement between Plaintiffs Graybeal and Defendant Perpetual is accordingly sustained.

Since the deed of trust *specifically stated* that Defendant was *not* required to capitalize or apply the real estate tax payments to reduce the unpaid balance of the loan, Plaintiffs cannot maintain a claim for breach of contract of an implied term contrary to the specific terms of the contract.

Plaintiffs, however, are not precluded from maintaining their unjust enrichment or usury claims as to the second loan. The legal and factual issues raised by those causes of action are in no way compromised by the non-capitalization provisions precluding the breach of contract claim.

25. Luther Williams, Jr., Inc. v. Johnson, 229 A.2d 163 (1967); Matthew v. Moncrief, 77 U.S.App.D.C. 221, 135 F.2d 645 (1943); Howenstein Realty Corp. v. Richardson, 77 U.S.App.D.C. 299, 135 F.2d 803 (1943).